1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEO LUIS DELIGIANNIS,<br><br>         Plaintiff,<br><br>     v.<br><br>CITY OF ANAHEIM, et al.,<br><br>         Defendants. | Case No. SACV 06-720 DOC(JC)<br><br>REPORT AND RECOMMENDATION OF UNITED STATE MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable David O. Carter, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.    SUMMARY

On December 6, 2007, plaintiff Theo Luis Deligiannis ("plaintiff"), who has paid the filing fee and is proceeding *pro se*, filed the operative verified Second Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 ("Second Amended Complaint" or "SAC") against seven defendants – the City of Anaheim ("the City") and four Anaheim Police Department ("APD") representatives, APD Chief John Welter ("Chief Welter"), APD Sergeant J. Tocco ("Tocco"), and APD Officers Tim

1    Smith ("Smith") and Dan Streuer ("Streuer") (collectively the "City Defendants"),[1]

2    and Anaheim Fullerton Towing (the "Towing Company") and its owner, Harry

3    Saehlenou  ("Saehlenou") (collectively the "Towing Defendants").

4         Plaintiff alleges that defendants' seizure of his vehicle, which was conducted

5    without a warrant or a pre-seizure hearing and occurred after plaintiff tore up a

6    parking citation:  (1) constituted an unreasonable seizure under the Fourth

7    Amendment; (2) violated his Fifth Amendment right to be free from having his

8    property taken without just compensation; (3) violated his constitutional rights to

9    procedural and substantive due process; and (4) constituted retaliation against him

10   for the exercise of his right to free speech (the destruction of the parking ticket)

11   under the First Amendment.  (SAC at 6-7, ¶¶ 51-61).  As to the City and Chief

12   Welter, plaintiff further alleges:  (5) a negligent failure adequately to train officers;

13   and (6) a negligent failure to formulate a written policy addressing when a car

14   should be impounded.  (SAC at 9, ¶¶ 73-74).  As to Chief Welter alone, plaintiff

15   also asserts:  (7) a negligent failure to supervise.  (SAC at 9, ¶¶ 75-76).  Plaintiff

16   also raises state law claims of:  (8) trespass to chattels; (9) negligence (as to the

17   Towing Defendants only); and (10) civil conspiracy (as to defendants Streuer,

18   Smith, Tocco and Saehlenou).  (SAC at 9-11, ¶¶ 62-65, 77-83).  Plaintiff seeks

19   monetary, declaratory and injunctive relief.  (SAC at 13).

20        On April 2, 2008, the City Defendants filed a Motion for Summary Judgment

21   (the "City Motion" or "CM") and supporting documents.[2]  On May 2, 2008,

22

23   _____

24        [1]To the extent plaintiff sues the individual City Defendants in their official capacities, the
     court treats the matter as a suit against the City itself.  See Kentucky v. Graham, 473 U.S. 159,
25   166 (1985) (official-capacity suit is, in all respects other than name, to be treated as a suit against
     the entity; such a suit is not a suit against the official personally, for the real party in interest is
26   the entity).

27        [2]The City Defendants concurrently submitted a Declaration of Deborah P. Knefel
     ("Knefel Decl.") with exhibits ("Knefel Ex."), and a Statement of (Proposed) Uncontroverted
28                                                                              (continued...)

                                         2

1 plaintiff filed an Opposition ("Plaintiff's City Opposition" or "PCO") and
2 supporting documents.[3]   The City Defendants filed a Reply (the "City Reply") on
3 May 16, 2008.
4      On April 30, 2008, the Towing Defendants also filed a Motion for Summary
5 Judgment (the "Towing Motion" or "TM"), and supporting documents.[4]   On May
6 30, 2008, plaintiff filed an Opposition ("Plaintiff's Towing Opposition" "PTO")
7 and supporting documents.[5]   The Towing Defendants did not file a Reply.
8      Based on the record and the applicable law, and for the reasons discussed
9 below, the Court should grant the City Motion and the Towing Motion to the extent
10 such motions seek summary judgment on plaintiff's federal claims over which the
11 Court has original jurisdiction, and the Court should decline to exercise
12 supplemental jurisdiction over, and dismiss plaintiff's state law claims.

13 **II.   FACTS[6]**

14      As of August 6, 2005, plaintiff had accrued five or more unpaid vehicle
15 citations which had been issued against his 1993 Honda Accord ("plaintiff's car")
16 outside of the APD's jurisdiction.   (SAC ¶ 30; Knefel Ex. A at 11-12; City SUF
17 ¶ 2; PR-City SUF ¶ 2; Towing SUF ¶ 2; PR-Towing SUF ¶ 2).   On August 6, 2005,

---

19
20      [2](...continued)
Facts and Conclusions of Law ("City SUF").

21
22      [3]Plaintiff concurrently submitted a Statement of Genuine Issues of Material Fact which
consists of plaintiff's response to the City SUF ("PR-City SUF"), plaintiff's statement of genuine
issues of fact ("PCSGI"), and exhibits ("PC-SGI Ex.").

23
24      [4]The Towing Defendants concurrently submitted a Declaration of Thomas C. Childs
("Childs Decl.") and a Statement of (Proposed) Uncontroverted Facts and Conclusions of Law
25 ("Towing SUF").

26      [5]Plaintiff concurrently submitted a Statement of Genuine Issues of Material Fact which
consists of plaintiff's response to the Towing SUF ("PR-Towing SUF") and plaintiff's statement
27 of genuine issues of fact ("PT-SGI").

28      [6]These facts are uncontroverted unless otherwise indicated.

3

1  defendant Streuer, in the presence of defendant Smith, issued a citation to plaintiff

2  for violation of California Vehicle Code section 5200 because plaintiff's car, which

3  was parked on the street, did not bear front or back license plates and originally had

4  its Vehicle Identification Number ("VIN") covered.[7]  (SAC ¶¶ 16, 18, 19; Knefel

5  Ex. A at 5-6; City SUF ¶ 1; PR-City SUF ¶ 1; Towing SUF ¶ 1; PR-Towing SUF

6  ¶ 1).  When plaintiff received the citation, he tore it up.[8]  (SAC at 4, ¶ 20; City SUF

7  ¶ 3; PR-City SUF ¶ 3).

8      When the APD learned that plaintiff had accrued five or more unpaid vehicle

9  citations from other jurisdictions, it impounded plaintiff's car and directed the

10  Towing Company to tow it.[9]  (SAC ¶¶ 29, 30; Childs Decl. ¶ 2; City SUF ¶ 4; PR-

11  City SUF ¶ 4; Towing SUF ¶ 3; PR-Towing SUF ¶ 3).  Plaintiff threatened to sue

12  the Towing Company driver if he towed plaintiff's car.  (Childs Decl. ¶ 3).  The

13  Towing Company towed plaintiff's vehicle at the direction of APD officers.

14  (Childs Decl. ¶ 2; PR-Towing SUF ¶ 4).

15      Plaintiff thereafter requested a "post storage hearing" which was held on

16  August 11, 2005.  (Knefel Ex. A at 12; City SUF ¶ 5; PR City SUF ¶ 5).  The

17  hearing officer found that the towing of plaintiff's vehicle was lawful under

18  ///

19  ///

20

21      [7]California Vehicle Code section 5200 requires that when two license plates are issued by
22  the California Department of Motor Vehicles for use upon a vehicle, they shall be attached to the
   vehicle for which they were issued, one in the front and the other in the rear.  Cal. Veh. Code
23  § 5200(a).

24      [8]Plaintiff asserts that defendant Streuer then said:  "When we get a few more tickets we
25  are gonna tow it!"  (SAC ¶ 21).  Plaintiff further asserts that defendant Streuer selectively
   monitored plaintiff's car at plaintiff's residence for code and parking violations, and would
26  attempt to find a reason to cite plaintiff's car and the cars belonging to plaintiff's neighbors.
27  (SAC ¶¶ 12, 13).

28      [9]Plaintiff asserts that the impound report names defendant Tocco as the one who
   approved the tow.  (SAC ¶ 35).

4

1  California Vehicle Code section 22651.[10]  (Knefel Ex. A at 13-14, Ex . B at 42;
2  City SUF ¶ 5; PR City SUF ¶ 5).

3      Between August 12 and 15, 2005, plaintiff paid the outstanding parking
4  citations and regained possession of his vehicle.[11]  (CDSUF ¶ 6; PR-CDSUF ¶ 6).

5  **III.   LEGAL STANDARD**

6      Summary judgment is proper where "the pleadings, the discovery and
7  disclosure materials on file, and any affidavits, if any, show that there is no genuine
8  issue as to any material fact and that the movant is entitled to judgment as a matter
9  of law." Fed. R. Civ. P. 56(c).  The court must view the facts and draw inferences
10  in the manner most favorable to the non-moving party.  United States v. Diebold,
11  Inc., 369 U.S. 654, 655 (1962); Chevron Corp. v. Pennzoil Co., 974 F.2d 1156,
12  1161 (9th Cir. 1992).  The moving party bears the initial burden of demonstrating
13  the absence of a genuine issue of material fact for trial, but it need not disprove the
14  other party's case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986);
15  Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986).  When the non-moving
16  party bears the burden of proving the claim or defense, the moving party can meet
17  its burden by pointing out that the non-moving party has failed to present any

18

19

20      [10]California Vehicle Code section 22651(i)(1) authorizes the impound of a vehicle if the
   vehicle has been issued five or more notices of parking violations to which the owner or person
21  in control of the vehicle has not responded within 21 calendar days of notice of citation issuance
   or citation issuance or 14 calendar days of the mailing of a notice of delinquent parking violation
22  to the agency responsible for processing notices of parking violation.  Cal. Veh. Code
   § 22651(i)(1).
23

24      [11]The City Defendants assert that plaintiff's vehicle was released to him on August 15,
   2005, upon presentation of a receipt for payment of the traffic citations. (City SUF ¶ 6; Knefel
25  Ex. B at 43).  Plaintiff asserts:  On August 12, 2005, plaintiff received a tow release from the
   APD after paying the outstanding parking citations and a tow release fee. (PR-City SUF ¶ 6).
26  Plaintiff then retrieved his car from the Towing Company after paying a $375 tow and storage
   fee. (PR-City SUF ¶ 6).  Evidence submitted by the Towing Defendants reflects that plaintiff's
27  car was released to plaintiff on August 12, 2005, after he paid fees and costs in the mount of
   $375. (Childs Decl. ¶ 3).
28

genuine issue of material fact.  Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Fed. R. Civ. P. 56] – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. P. 56(e)(2); see also Anderson, 477 U.S. at 248-49.  Furthermore, a party cannot create a genuine issue of material fact simply by making assertions in its legal papers.  There must be specific, admissible evidence identifying the basis for the dispute.  S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc., 690 F.2d 1235, 1238 (9th Cir. 1980).  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence  . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]."  Anderson, 477 U.S. at 252.

A verified complaint based on personal knowledge setting forth specific facts admissible in evidence is treated as an opposing affidavit under Rule 56. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).  A verified pleading based on personal knowledge in opposition to a summary judgment motion setting forth facts that would be admissible in evidence may also function as an affidavit. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir.), cert. denied, 525 U.S. 840 (1998).[12]

///

///

[12]In light of these authorities, the court considers plaintiff's statements in the Second Amended Complaint, Plaintiff's City Opposition, Plaintiff's Towing Opposition, Plaintiff's City SUF, and Plaintiff's Towing SUF, which are sworn to under penalty of perjury, as evidence to the extent the assertions therein appear to be based on plaintiff's personal knowledge and are otherwise admissible.

1    **IV.    DISCUSSION**

2        The City Defendants contend that summary judgment should be granted in

3    their favor on plaintiff's Section 1983 claim because:  (1) individual defendants

4    Streuer, Smith and Tocco are entitled to qualified immunity; and (2) the City and

5    defendant Welter are not liable on the Section 1983 claim as there was no

6    constitutional violation and plaintiff has otherwise failed to present evidence

7    sufficient to persuade a trier of fact that such defendants are liable.  The Towing

8    Defendants contend that summary judgment should be granted in their favor on

9    plaintiff's Section 1983 claim because they are entitled to a "good faith" defense.

10       **A.    Qualified Immunity – Defendants Streuer, Smith and Tocco**

11            **1.    Pertinent Law**

12       "Qualified immunity is 'an entitlement not to stand trial or face the other

13   burdens of litigation.'"  <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (quoting

14   <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).  Courts evaluate a defendant's

15   qualified immunity defense using a two-step inquiry.[13]  <u>Id.</u>  However, the Supreme

16   Court recently held that this two-step inquiry is no longer "an inflexible

17   requirement."  <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818 (2009) (explaining "that,

18   while the sequence set forth [in <u>Saucier</u>] is often appropriate, it should no longer be

19   regarded as mandatory").  It is within courts' "sound discretion in deciding which

20   of the two prongs of the qualified immunity analysis should be addressed first in

21   light of the circumstances in the particular case at hand."  <u>Id.</u>

22       Under the first prong of the <u>Saucier</u> test, courts consider whether, "[t]aken in

23   the light most favorable to the party asserting the injury, . . . the facts alleged show

24   the officer's conduct violated a constitutional right."  <u>Saucier</u>, 533 U.S. at 201.

25   Where disputed issues of fact remain, the facts are considered in the light most

26   _____

27       [13]This court rejects plaintiff's contention that it need not proceed to the two-step inquiry
28   because defendants Streuer, Smith and Tocco did not act within the scope of their discretionary
     authority.  (PCO at 13-15).

1   favorable to the non-moving party.  Ramirez v. City of Buena Park, 560 F.3d 1012,

2   1020 (9th Cir. 2009) (citation omitted).  "If no constitutional right would have been

3   violated were the allegations established, there is no necessity for further inquiries

4   concerning qualified immunity."  Saucier, 533 U.S. at 201.

5        Under the second prong of the Saucier test, courts ask "whether the right was

6   clearly established."  Id.  To be "clearly established," the "'contours of the right

7   must be sufficiently clear that a reasonable official would understand that what he

8   is doing violates that right.'"  Id. at 202 (quoting Anderson v. Creighton, 483 U.S.

9   635, 640 (1987)).  The dispositive inquiry is "whether it would be clear to a

10  reasonable officer that his conduct was unlawful in the situation he confronted."

11  Id.  "If the officer's mistake as to what the law requires is reasonable, . . . the

12  officer is entitled to the immunity defense."  Id. at 205.

13                  **2.    Analysis**

14       Defendants Streuer, Smith and Tocco contend that they are entitled to

15  qualified immunity on the Section 1983 claim because their conduct did not violate

16  plaintiff's constitutional rights.[14]  Here, plaintiff's Section 1983 claim is predicated

17  upon the Fourth, Fifth, Fourteenth and First Amendments.  Defendants do not

18  specifically address each such predicate for plaintiff's Section 1983 claim, and

19  more generally argue that plaintiff fails to demonstrate that they violated his

20  constitutional rights or that they acted unreasonably.  This court specifically

21  addresses whether genuine issues of material fact exist as to whether the conduct of

22  the foregoing defendants violated each such constitutional right and as to whether

23  these defendants are otherwise entitled to qualified immunity.

24

25

─────────────

26       [14]To prove a claim under 42 U.S.C. § 1983, a plaintiff must establish:  (1) a right secured
   by the Constitution or laws of the United States was violated, and (2) the deprivation was
27  committed by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48
   (1988) (citations omitted).  Defendants do not dispute that they were acting under color of state
28  law at all pertinent times.

8

1

           **a.**      **Fourth Amendment Claim**

2        Plaintiff asserts that defendants' seizure of plaintiff's car violated the Fourth

3 Amendment because it was performed without a warrant, probable cause or exigent

4 circumstances.  Defendants contend that the seizure was reasonable and did not

5 violate plaintiff's constitutional rights.

6

                **i.**      **Applicable Law**

7        The impoundment of an automobile is a seizure within the meaning of the

8 Fourth Amendment.  <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 862 (9th Cir.

9 2005).  While California Vehicle Code section 22651(i)(1) authorizes an officer, in

10 specified circumstances, to impound a vehicle with five or more unpaid parking

11 violations, an impoundment pursuant to the authority of a state statute does not, in

12 and of itself, determine the reasonableness of a seizure under the Fourth

13 Amendment.  <u>See</u> <u>Ramirez v. City of Buena Park</u>, 560 F.3d 1012, 1024-25 (9th Cir.

14 2009) (citation and quotations omitted).  The question presented to a federal court

15 upon review of a state-approved seizure is not whether the seizure was authorized

16 by state law, but rather whether it was reasonable under the Fourth Amendment.

17 <u>Id.</u> at 865 (citation and quotations omitted).

18        A seizure conducted without a warrant is per se unreasonable under the

19 Fourth Amendment – subject only to a few specifically established and well

20 delineated exceptions.  <u>Id.</u>  (citations and quotations omitted).  The burden is on the

21 government to persuade the court that a seizure comes under one of a few

22 specifically established exceptions to the warrant requirement.  <u>Miranda</u>, 429 F.3d

23 at 862 (citation omitted).

24        The impoundment of a vehicle is not rendered "reasonable" under the Fourth

25 Amendment merely because probable cause exists to believe that the driver of a

26 vehicle committed a traffic violation.  <u>Miranda</u>, 429 F.3d at 862-64.[15]  The Ninth

27 ────────────────

28      [15]Probable cause to believe there has been a traffic violation is, however, sufficient justification for police officers to seize a vehicle for a traffic stop.  <u>Miranda</u>, 429 F.3d at 864 n.4

(continued...)

1   Circuit has further determined that the impoundment of a legally parked vehicle is

2   not necessary to enforce traffic regulations and thus, that some additional

3   justification is required if such impoundment is to comport with the Fourth

4   Amendment.  Id. at 864 n.4.  Typically, such additional justification, is

5   demonstrated by the "community caretaking" exception to the Fourth Amendment

6   warrant requirement.  Id.

7        Under the "community caretaking" exception to the Fourth Amendment

8   warrant requirement, police officers may constitutionally impound vehicles that

9   "imped[e] traffic or threaten[] public safety and convenience."  South Dakota v.

10  Opperman, 428 U.S. 364, 368-69 (1976); see also Miranda, 429 F.3d at 866

11  (purpose of community caretaking function is to remove vehicles that are presently

12  impeding traffic or creating hazard).  "Whether an impoundment is warranted under

13  this community caretaking doctrine depends on the location of the vehicle and the

14  police officers' duty to prevent it from creating a hazard to other drivers or being a

15  target for vandalism or theft."  Miranda, 429 F.3d at 864; see also Ramirez, 560

16  F.3d at 1025 (same); United States v. Caseres, 533 F.3d 1064, 1075 (9th Cir. 2008)

17  (same).  "An officer cannot reasonably order an impoundment in situations where

18  the location of the vehicle does not create any need for the police to protect the

19  vehicle or to avoid a hazard to other drivers."  Id. at 866 (citing United States v.

20  Squires, 456 F.2d 967, 970 (2d Cir. 1972) (since arrestee's vehicle parked in

21  parking lot behind apartment house where arrestee lived, which was appropriate

22  place for it to be, and since arrestee did not consent to its removal, officers did not

23  have reasonable basis for concluding it was necessary to take car to police station

24  to protect it)).

25  ///

26

27  _____

28  [15](...continued)
(citing Wren v. United States, 517 U.S. 806, 817 (1996)).  Further, the violation of a traffic
regulation justifies impoundment of a vehicle if the driver is unable to remove the vehicle from a
public location without continuing its illegal operation.  Id. at 865.

1    In assessing whether a seizure of a vehicle is justified by the community

2 caretaking exception, a court must examine whether the seizure was reasonable

3 based on all of the facts presented. <u>Miranda</u>, 429 F.3d at 864 (citation omitted)

4 (rejecting community caretaking rationale for impoundment of car where car,

5 which had been driven by unlicensed driver in company of licensed driver, was

6 legally parked in licensed driver's driveway at time of traffic stop, and was not

7 creating any impediment to traffic or threatening public safety); <u>see also</u> <u>Ramirez</u>,

8 560 F.3d at 1024-25 (impoundment warranted under community caretaking

9 rationale where arrestee's car, which was parked in drugstore parking lot, would

10 have made easy target for vandalism or theft); <u>Caseres</u>, 533 F.3d at 1075 (rejecting

11 community caretaking rationale for impoundment of arrestee's car where car

12 legally parked at curb of residential street two houses away from arrestee's home

13 and no evidence presented to show impoundment necessary to prevent

14 theft/vandalism or that car was blocking driveway/crosswalk, or otherwise posed

15 hazard or impediment to other traffic); <u>People v. Williams</u>, 145 Cal. App. 4th 756,

16 759-60 (2006) (rejecting community caretaking rationale for impoundment of

17 arrestee's car where car legally parked at curb in front of arrestee's residence, car

18 did not pose traffic hazard, there was no apparent risk of theft or vandalism, and

19 officer had no reason to believe car had been stolen or otherwise was not legally in

20 arrestee's possession).

21    The Ninth Circuit has not addressed whether impounding a vehicle based

22 upon multiple unpaid parking tickets falls within the community caretaking

23 function (or other exception to the warrant requirement).  It has, however,

24 recognized that implementing parking regulations is a valid governmental interest

25 and that towing not only implements such regulations directly by removing

26 illegally parked cars, but the threat of towing also deters future transgressions.  <u>See</u>

27 <u>Scofield v. City of Hillsborough</u>, 862 F.2d 759, 763-64 (9th Cir. 1988) (towing of

28 unregistered vehicles advances government's interest of getting cars registered and

deters owners from violating state registration laws) (citing <u>Sutton v. City of Milwaukee</u>, 672 F.2d 644, 648 (7th Cir. 1982)); <u>see also</u> <u>Lone Star Security & Video, Inc. v. City of Los Angeles</u>, 584 F.3d 1232 (9th Cir. 2009) (no due process violation where City towed marketing trailers illegally parked for more than 72 hours in one location without individualized prior notice because City's interests in deterring illegal practice, preventing vandalism and abating nuisance outweighed owner's interest in receiving such notice); <u>Clement v. City of Glendale</u>, 518 F.3d 1090, 1094-95 (9th Cir. 2008) (tow may be appropriate where there are no current registration stickers and police can't be sure that owner won't move or hide the vehicle rather than pay the fine for illegal parking); <u>Scheidecker v. City of Napa</u>, 1994 WL 589336 *4 (N.D. Cal. 1994) (finding that officers acted reasonably in the interest of general welfare in impounding vehicle temporarily because it had more than five outstanding unpaid parking tickets).  Presumably, towing vehicles with multiple unpaid parking citations advances the government's interest of ensuring that drivers do not park illegally and deters owners from violating parking laws. Having said that, the Ninth Circuit has expressly determined that the "need to deter a driver's unlawful conduct is by itself insufficient to justify a warrantless tow under the 'caretaker' rationale." <u>Miranda</u>, 429 F.3d at 866.

### ii.    Analysis

Defendants Streuer, Smith and Tocco argue that no genuine issue of material fact exists as to whether their seizure of plaintiff's vehicle was reasonable because the seizure was lawful under state law and, in any event, fell within the community caretaking function because plaintiff's car was on the public street without the requisite displayed identifying license plates or VIN number.  This court concludes that genuine issues of material fact exist as to whether these defendants violated plaintiff's Fourth Amendment rights by impounding or causing plaintiff's car to be impounded without a warrant or pursuant to an applicable exception to the warrant requirement.  However, such defendants are entitled to qualified immunity because

1   there is (and was at the time of the impound in issue) no clearly established law

2   which prohibits the warrantless seizure of a car based upon unpaid parking tickets.

3   　　　First, this court must reject these defendants' contention that the seizure

4   of plaintiff's vehicle was reasonable under the Fourth Amendment by virtue of the

5   fact that the seizure assertedly comported with state law.[16]  Compliance with state

6   law does not establish compliance with the Fourth Amendment.  See Ramirez, 560

7   F.3d at 1024-25.

8   　　　Second, these defendants fail to demonstrate that no genuine issue of

9   material fact exists with respect to whether the warrantless seizure of plaintiff's car

10  was otherwise rendered reasonable under an exception to the Fourth Amendment

11  warrant requirement.  As to the whether the impoundment was potentially justified

12  under the community caretaker exception, this court must, as noted above, consider

13  the location of the vehicle and the police officers' duty to prevent it from creating a

14  hazard to other drivers or being a target for vandalism or theft.  Miranda, 429 F.3d

15  at 864; Ramirez, 560 F.3d at 1025; Caseres, 533 F.3d at 1075.  Here, the car was

16  parked on the street in front of plaintiff's home.  Defendants offer no evidence that

17  plaintiff's vehicle jeopardized either the public safety or the efficient movement of

18  vehicular traffic.  Opperman, 428 U.S. at 368-69.  Nor do defendants offer

19  evidence that plaintiff's vehicle was blocking a driveway or crosswalk, that it was a

20  potential target for vandalism or theft, or that they were concerned that plaintiff

21  would move or hide the vehicle to avoid paying the fine.  Caseres, 533 F.3d at

22  1075; Miranda, 429 F.3d at 864.  Although this court does not question that

23  impounding a vehicle for unpaid parking tickets advances the legitimate state

24  interest of deterring drivers from violating parking laws, the Ninth Circuit, as noted

25

26  _____

27  　　[16]Plaintiff disputes that defendants complied with state law, noting, among other things,
    that he had disputed the outstanding tickets and that defendants have introduced no evidence to
28  demonstrate that he had not contested the prior tickets within the time frame specified in
    California Vehicle Code section § 22651(i)(1) – a necessary predicate to towing under such
    statute.

1   above, has rejected the notion that deterrence, by itself, is sufficient to justify a

2   warrantless tow under the caretaker rationale.  Miranda, 429 F.3d at 866.  As also

3   noted above, the Ninth Circuit has rejected the notion that impoundment of a

4   legally parked vehicle is necessary to enforce vehicle regulations.  Id. at 864 n.4.

5   Accordingly, Ninth Circuit authority compels this court to conclude that the

6   defendants in issue have failed to demonstrate that the warrantless seizure of

7   plaintiff's vehicle came within the "community caretaking function" or other

8   exception to the warrant requirement of the Fourth Amendment.  Miranda, 429

9   F.3d at 862.

10        As the foregoing defendants do not offer a sufficient basis upon which to

11  conclude that their conduct in seizing plaintiff's car without a warrant was

12  reasonable, they have failed to demonstrate the absence of genuine issues of

13  material fact as to whether these defendants violated plaintiff's Fourth Amendment

14  rights.

15        However, under the second prong of Saucier test, this court must consider

16  whether, assuming plaintiff has a constitutional right under the Fourth Amendment

17  not to have his car towed from in front of his home without a warrant based upon

18  multiple unpaid parking tickets, such right was clearly established at the time of the

19  events in issue.  As there is no currently existing clearly established law which so

20  holds, this court finds that there was no such clearly established law at the time of

21  the events in issue.  In 1976, the Supreme Court in Opperman generally described

22  the community caretaking exception, but did not define its parameters to exclude

23  the seizure of cars with multiple unpaid parking tickets – something which at least

24  one court had by then recognized served the general welfare.  See Scheidecker,

25  1994 WL 589336 at *4.  In 1988, in Scofield, the Ninth Circuit recognized that

26  towing of unregistered cars could properly serve a deterrent function and promote

27  compliance with the law.  Scofield, 862 F.2d at 763-64.  Miranda, which was

28  issued on November 17, 2005, appears to be the first governing decision which

14

1   delineated the parameters of the community caretaking exception and concluded

2   that deterrence is not itself a sufficient justification to tow a vehicle without a

3   warrant under such exception.  Miranda, 429 F.3d at 864, 866.  Even assuming

4   Miranda "clearly established" that the warrantless towing of a vehicle parked in

5   front of the registered owner's home for unpaid parking tickets was not reasonable

6   under the Fourth Amendment – a factual scenario distinct from that actually

7   considered in Miranda – the impoundment in issue here occurred on August 6,

8   2005, i.e., before Miranda was issued.  Accordingly, this court concludes that,

9   assuming there currently is a constitutional right not to have one's car towed from

10  the front of one's home without a warrant based upon multiple unpaid parking

11  tickets, there was no such "clearly established" right in August 2005, when

12  plaintiff's car was towed.[17]

13          Accordingly, defendants Streuer, Smith and Tocco are entitled to qualified

14  immunity on plaintiff's Section 1983 claim to the extent such claim is predicated

15  upon the Fourth Amendment.  Summary judgment on such predicate should be

16  granted in their favor.

17                          **b.     Fifth Amendment Claim**

18          Plaintiff alleges that he was deprived of his constitutional rights under the

19  Fifth Amendment not to be deprived of property without due process of law and the

20

21  _____

22  [17]Plaintiff argues that the Seventh Circuit's decision in United States v. Duguay, 93 F.3d
    346 (7th Cir. 1996), which contains reasoning consistent with Miranda and was issued nine years

23  before the events in question, was "clearly established" on the seizure date.  (PCO at 18).
    However, Duguay (i) involved distinguishable facts – the impound of a criminal arrestee's

24  car in an apartment parking lot; (ii) occurred in Illinois; (iii) was decided by the Seventh Circuit;
    and (iv) was not referenced by a published California state court, California district court or

25  Ninth Circuit decision until Miranda.  Duguay, 93 F.3d at 346, 348-49; Miranda, 429 F.3d at

26  865.  Thus, even assuming Duguay "clearly established" the existence of a constitutional right
    not to have one's car towed without a warrant based upon multiple unpaid parking tickets in the

27  Seventh Circuit,  it would not have been clear to a reasonable officer in California in August
    2005, that such a right existed and that towing a car under such circumstances was

28  unconstitutional.

1    right to just compensation for taking of property.  (SAC ¶ 52).  Defendants contend

2    that their actions were reasonable and did not violate plaintiff's constitutional

3    rights.  Defendants are entitled to summary judgment on plaintiff's Fifth

4    Amendment claim as a matter of law.

5        First, to the extent plaintiff invokes the Fifth Amendment as a basis for his

6    due process claim, summary judgment in favor of defendants is appropriate

7    because the Fifth Amendment's due process clause only applies to the federal

8    government and none of the defendants is a federal employee or entity.[18]  See

9    Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008).

10       Second, to the extent plaintiff invokes the "Takings Clause" of the Fifth

11   Amendment, summary judgment in favor of defendants is also appropriate as a

12   matter of law.  The Fifth Amendment, which constrains municipalities through its

13   incorporation by the Fourteenth Amendment, prohibits private property to be taken

14   for public use without just compensation.  Weinberg v. Whatcom County, 241 F.3d

15   746, 752 (9th Cir. 2001).  However, property seized pursuant to the police power is

16   not taken for a public use in the context of the Takings Clause.  AmeriSource Corp.

17   v. United States, 525 F.3d 1149, 1153 (Fed. Cir. 2008), cert. denied, 129 S. Ct.

18   1611 (2009).  Here, while the propriety of the exercise of the police's authority to

19   seize plaintiff's vehicle remains in issue, the record reflects that such vehicle was

20   seized by the police pursuant to its police power under California Vehicle Code

21   section 22651(i)(1).  Thus, plaintiff's vehicle was not seized for a "public use" in

22   the context of the Takings Clause.

23       As plaintiff fails to raise a genuine issue with respect to whether he was

24   deprived of any constitutional right under the Fifth Amendment, defendants

25   Streuer, Smith and Tocco are entitled to qualified immunity and summary judgment

26   ///

27

28       [18]The court considers below plaintiff's due process claims under the Fourteenth
Amendment, which applies to states and municipalities.

16

1    on plaintiff's Section 1983 claim to the extent such claim is predicated upon the

2    Fifth Amendment.

3         c.    **Fourteenth Amendment – Procedural Due Process**

4              **Claim**

5         Plaintiff asserts that he was deprived of procedural due process because a

6    hearing was not held prior to the seizure of his car.[19]  (SAC ¶ 58).  Defendants

7    contend that their actions were reasonable and did not violate plaintiff's

8    constitutional rights.  While this court finds, based upon <u>Miranda</u>, that there are

9    genuine issues of material fact as to whether plaintiff was constitutionally entitled

10   to a pre-seizure hearing in this case, this court further finds that defendants Streuer,

11   Smith and Tocco are entitled to qualified immunity because no clearly established

12   law required such a hearing at the time of the events in issue.

13        In <u>Miranda</u>, the Ninth Circuit recognized that it had previously decided

14   multiple cases which support the proposition that procedural due process does not

15   require pre-deprivation notice and a hearing before impoundments.  <u>Miranda</u>, 429

16   F.3d at 867 (citing <u>Soffer v. City of Costa Mesa</u>, 798 F.2d 361, 363 (9th Cir. 1986);

17   <u>Goichman v. Rheuban Motors, Inc.</u>, 682 F.2d 1320, 1323-24 (9th Cir. 1982);

18   <u>Stypmann v. City and County of San Francisco</u>, 557 F.2d 1338, 1342 (9th Cir.

19   1977)).  It nonetheless determined that such cases were not controlling in light of

20   the unusual facts presented – that the Mirandas' car was impounded when it was

21   safely and securely in the driveway of their home and Mr. Miranda had a valid

22   registration for the car and a valid driver's license.  <u>Id.</u>  Although the Ninth Circuit

23   noted that "[i]mpoundment of a vehicle left in a public place . . . " presumably

24

25        _____

26        [19]Plaintiff does not contend that his due process rights were violated by the lack of pre-
     tow notice.  In any event, such a claim would lack merit because the uncontroverted facts
27   establish that plaintiff was present during, and had actual notice of the towing of his car before it
     happened.  <u>See</u> <u>Strong v. Tolman</u>, 2009 WL 1845136 (E.D. Cal. 2009) (rejecting Fourteenth
28   Amendment due process claim predicated upon lack of pre-seizure notice of vehicle impound
     where plaintiff present at time of impoundment and thus had actual notice).

1    would not require a pre-seizure hearing, it went on to explain that such was the
2    case because such an impoundment would likely be justified by the need to respond
3    immediately to the hazard or public safety threat caused by the location of the
4    vehicle, which would be incompatible with a requirement of notice and a hearing
5    beforehand. Id. at 867.  In short, the Ninth Circuit suggested that absent a
6    legitimate caretaking purpose in impounding a car, whether a pre-deprivation
7    hearing is required in a given case is a factual matter requiring a detailed analyses
8    of the competing interests involved. Id.  As genuine issues of material fact exist
9    with respect to the potential applicability of the community caretaking exception or
10   other exception to the warrant requirement in this case, and in light of Miranda, this
11   court cannot determine as a matter of law whether plaintiff was constitutionally
12   entitled to a pre-deprivation hearing.

13        However, under the second prong of the Saucier test, this court considers
14   whether, assuming plaintiff had a constitutional right to a pre-deprivation hearing,
15   such right was "clearly established" at the time of the events in issue.  As noted
16   above, Miranda was not decided until *after* plaintiff's car was impounded.  It would
17   have been reasonable for the defendants in issue to have interpreted the prior Ninth
18   Circuit case law (cited in Miranda) as not requiring a pre-seizure hearing. See
19   Clement, 518 F.3d at 1096 (officer who called for towing of car parked in violation
20   of planned non-operation certificate without giving pre-seizure notice entitled to
21   qualified immunity as it would not have been unreasonable for officer to have
22   interpreted case law as not requiring that pre-seizure notice be given).

23        Accordingly, defendants Streuer, Smith and Tocco are entitled to qualified
24   immunity on plaintiff's Section 1983 claim to the extent such claim is predicated
25   upon a violation of plaintiff's Fourteenth Amendment right to procedural due
26   process.  Summary Judgment on such predicate should be granted in their favor.
27   ///
28   ///

18

1

2

#### d. Fourteenth Amendment – Substantive Due Process Claim

3   Plaintiff also asserts that defendants violated plaintiff's right to substantive

4   due process by seizing his vehicle without a warrant or pre-seizure hearing.  (SAC

5   ¶ 58).  Defendants contend that their actions were reasonable and did not violate

6   plaintiff's constitutional rights.

7   In order to state a cognizable substantive due process claim, plaintiff must

8   establish that defendants' actions were "clearly arbitrary and unreasonable, having

9   no substantial relation to the public health, safety, morals, or general welfare."

10  Hoeck v. City of Portland, 57 F.3d 781, 786 (9th Cir. 1995) (quoting Village of

11  Euclid, Ohio v. Ambler Realty Co., 272 U.S. 265, 395 (1926)), cert. denied, 516

12  U.S. 1112 (1996).  Here, although an issue remains as to whether, under Ninth

13  Circuit jurisprudence, the seizure of plaintiff's vehicle without a pre-seizure

14  hearing was reasonable under the Fourth Amendment, plaintiff fails to meet his

15  burden to demonstrate that the seizure was "clearly arbitrary and unreasonable,

16  having no substantial relation the public health, safety, morals, or general welfare."

17  Rather, as discussed above, the statute pursuant to which the APD officers seized

18  plaintiff's vehicle, advanced the legitimate state interest of deterring drivers from

19  violating parking laws, and thereby promoted the general welfare.  Plaintiff fails to

20  present evidence from which a reasonable trier of fact could conclude that the

21  actions of the officers in issue lacked a substantial relation to the general welfare.

22  Accordingly, defendants Streuer, Smith and Tocco are entitled to summary

23  judgment on plaintiff's Section 1983 claim to the extent such claim is predicated

24  upon an alleged violation of plaintiff's Fourteenth Amendment right to substantive

25  due process.

#### e. First Amendment Claim

26

27  Plaintiff also argues that defendants violated the First Amendment by

28  retaliating against him for the exercise of his right to free political speech, *i.e.*, that

1   they had his car towed to retaliate against him for tearing up the August 6 parking

2   citation.  (SAC ¶¶ 20, 61).  Defendants contend that their actions were reasonable

3   and did not violate plaintiff's constitutional rights.

4        To establish a First Amendment retaliation claim, a plaintiff must show that

5   (1) he was engaged in a constitutionally protected activity; (2) the defendant's

6   actions would chill a person of ordinary firmness from continuing to engage in the

7   protected activity; and (3) the protected activity was a substantial or motivating

8   factor in the defendant's conduct.  Corales v. Bennett, 567 F.3d 554, 563 (9th Cir.

9   2009) (citation and quotations omitted).  Plaintiff has failed to introduce evidence

10  from which a reasonable trier of fact could conclude that defendants Streuer, Smith

11  and Tocco retaliated against plaintiff because plaintiff engaged in constitutionally

12  protected activity.  Accordingly, such defendants are entitled to summary judgment

13  on plaintiff's Section 1983 claim to the extent such claim is predicated upon the

14  First Amendment.

15  **B.    The City and Chief Welter Are Entitled to Summary Judgment on**

16  **Plaintiff's Section 1983 Claim**

17       The City Defendants argue that plaintiff's claims against the City and Chief

18  Welter for negligent failure to train/supervise and negligent failure to formulate a

19  written policy addressing when a car should be impounded must fail because no

20  constitutional violation occurred and because plaintiff fails to present evidence that

21  such defendants are liable.  (CM at 9-10; City Reply at 3-4).  Plaintiff disagrees.

22  (PCO at 19-20).  This court finds that the City and Chief Welter are entitled to

23  summary judgment on plaintiff's Section 1983 claim because plaintiff offers only

24  unsupported allegations regarding such defendants' liability and fails to present

25  evidence from which a reasonable trier of fact could conclude that such defendants

26  are liable.

27  ///

28  ///

1                          **1.      Relevant Authority**

2              In limited circumstances, a person can be subject to Section 1983 liability for

3      the acts of others.  Although there is no pure *respondeat superior* or agency

4      liability under Section 1983, a supervisor is liable for the constitutional violations

5      of a subordinate "if the supervisor participated in or directed the violations, or

6      knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d

7      1040, 1045 (9th Cir. 1989).  Thus, liability may be imposed against a supervisory

8      official in his individual capacity for his own culpable action or inaction in the

9      training, supervision, or control of his subordinates, for his acquiescence in the

10     constitutional deprivations of which the complaint is made or for conduct that

11     showed a reckless or callous indifference to the rights of others.  Menotti v. City of

12     Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) (citing Larez v. City of Los Angeles,

13     946 F.2d 630, 646 (9th Cir. 1991)).

14             In order to demonstrate municipal liability under Section 1983, a plaintiff

15     must show that the unconstitutional deprivation of rights arises from a

16     governmental custom, policy, or practice.  Monell v. Department of Social

17     Services, 436 U.S. 658, 691 (1978).  Further, inadequacy of training may be

18     grounds for municipal liability under Section 1983 when such lack of training

19     amounts to deliberate indifference to the constitutional rights of those with whom

20     municipal employees come into contact.  City of Canton v. Harris, 489 U.S. 378,

21     388 (1989).

22             "Neither a municipality nor a supervisor, however, can be held liable under

23     § 1983 where no injury or constitutional violation has occurred."  Jackson v.

24     Bremerton, 268 F.3d 646, 653-54 (9th Cir. 2001); see also Quintanilla v. City of

25     Downey, 84 F.3d 353, 355 (9th Cir. 1997) (municipality not liable under Section

26     1983 for acts committed pursuant to municipal policy or custom unless plaintiff

27     shows the individual actors actually violated his constitutional rights), cert. denied,

28     519 U.S. 1122 (1997); Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th

                                               21

1  Cir. 1989) (inadequacy of training must be shown to have actually caused
2  constitutional deprivation in issue).

3  **2.    Analysis**

4  First, the City and Chief Welter are entitled to summary judgment on
5  plaintiff's Section 1983 claim to the extent such claim is predicated upon asserted
6  violations of the Fifth Amendment, Fourteenth Amendment substantive due
7  process, and the First Amendment because, as discussed above, plaintiff fails to
8  demonstrate that such constitutional rights were violated.

9  Second, the City and Chief Welter are also entitled to summary judgment on
10  plaintiff's claim that such defendants are liable on the foregoing alleged
11  constitutional violations, as well as the remaining alleged constitutional violations
12  of the Fourth Amendment and Fourteenth Amendment procedural due process,
13  because plaintiff presents no *evidence* (as opposed to his speculation and belief)
14  that (i) Chief Welter participated in or directed the alleged violations, or knew of
15  the alleged violations and failed to act to prevent them; (ii) the City had a deficient
16  custom, policy or practice regarding the impoundment of vehicles; (iii) the City and
17  Chief Welter provided inadequate training which amounted to deliberate
18  indifference to the constitutional rights of those with whom municipal employees
19  come into contact; or (iv) the alleged violations arose from a governmental custom,
20  policy, or practice or inadequate training which amounted to deliberate indifference
21  to the constitutional rights of those with whom municipal employees come into
22  contact.

23  Accordingly, summary judgment should be granted in favor of Chief Welter
24  and the City on plaintiff's Section 1983 claim.

25  ///
26  ///
27  ///
28  ///

22

1  **C.   The Towing Defendants Are Entitled to Summary Judgment on**
2  **Plaintiff's Section 1983 Claim**

3  The Towing Defendants argue they are entitled to a "good faith" defense to
4  plaintiff's section 1983 claim.  (TM at 5-6).[20]  This Court agrees.

5  In <u>Clement</u>, the Ninth Circuit recognized that private defendants may invoke
6  a good faith defense to a Section 1983 claim on facts similar to those presented in
7  the instant case.  <u>Clement</u>, 518 F.3d at 1097.  The Ninth Circuit affirmed a grant of
8  summary judgment in favor of a private defendant towing company who was sued
9  under Section 1983 for towing the plaintiff's car:  "Having acted on instructions
10  from the . . . [p]olice [d]epartment that specifically called for the tow, [defendant] is
11  entitled to invoke the good faith defense. <u>Id.</u> at 1097.

12  Here, the undisputed facts show that, as in <u>Clement</u>, the Towing Company
13  was called to the scene by the police and was instructed by a police officer to tow
14  the plaintiff's vehicle.  (TM at 5-6, 7).  Plaintiff argues that this case is
15  distinguishable from <u>Clement</u> because here, he affirmatively told the tow truck
16  driver that towing his vehicle was illegal, that there was no warrant for seizing the
17  vehicle, and that plaintiff would sue the driver and/or the Towing Company if the
18  driver towed the vehicle.  (PTO at 6; PT-SGI ¶ 9).  The record also reflects that the
19  towing driver then asked defendant Streuer "if he had to tow the car," to which
20  defendant Streuer replied, "yes."  (PTO at 6; PT-SGI ¶ 10).

21

22 ───────────────

[20]Contrary to plaintiff's contention (PTO at 7-8), the Towing Defendants have not waived
23  their good faith defense.  Though the Towing  Defendants did not list good faith as a separate
    affirmative defense in their Answer, they asserted that they towed plaintiff's vehicle at the
24  direction of the Anaheim Police Department.  This was sufficient to put plaintiff on notice that
    the Towing Defendants intended to raise a good faith defense.  <u>Clement</u>, 518 F.3d at 1097; <u>see</u>
25  <u>also</u> <u>Tarantino v. Syputa</u>, 2008 WL 755287 *1 (9th Cir. Mar. 20, 2008) (unpublished) ("The
    towing companies' filings in the district court did not articulate the [good faith] defense as
26  clearly as might be desired, but they sufficiently placed [the plaintiff] on notice that the
    companies were raising a good faith defense." (citing <u>Clement</u>, 518 F.3d at 1097)) (The court
27  may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. <u>See</u> U.S. Ct.
    App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a)).
28

1
2
3
4
5
6
7
8
9

Here, accepting plaintiff's version of the facts, the court must determine whether the Towing Defendants are entitled to summary judgment based on a good faith defense as a matter of law.  While the facts presented are somewhat different than those in Clement, here, as in Clement, the crucial undisputed fact is that the Towing Defendants acted on instructions from the police department that specifically called for the tow.  The fact that plaintiff protested and threatened to sue – particularly where no then clearly established law suggested that plaintiff had a viable constitutional claim – does not alter the fact that the Towing Company driver acted in response to what appeared to be a lawful direction from the police.

10
11
12

In light of the foregoing facts and governing law, the Towing Defendants are entitled to summary judgment on plaintiff's Section 1983 claim based on a good faith defense as a matter of law.

13
14

**D.    The Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims**

15
16
17
18
19
20
21
22
23
24
25
26
27

As it is appropriate to grant summary judgment in favor of the City Defendants and the Towing Defendants on plaintiff's federal claims over which the Court has original jurisdiction, and as the balance of pertinent factors (judicial economy, convenience, fairness, and comity) weigh against the exercise of supplemental jurisdiction in this case, particularly as plaintiff has already administratively litigated the propriety of the APD officers' actions under state law, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss such claims without prejudice pursuant to 28 U.S.C. § 1367(c).  See Baptiste v. Los Angeles County Sheriff's Department, 225 Fed. Appx. 625 (9th Cir. 2007) (unpublished) (District Court properly declined to exercise supplemental jurisdiction over plaintiff's state law claims after it granted summary judgment on all claims over which it had original jurisdiction);[21] Acri v. Varian Associates, Inc. v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir.

28

_____

[21]As indicated in note 20, supra, the court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.

1  1997) (en banc) ("The Supreme Court has stated, and we have often repeated, that
2  'in the usual case in which all federal-law claims are eliminated before trial, the
3  balance of factors . . . will point toward declining to exercise jurisdiction over the
4  remaining state-law claims.'") (quoting Carnegie-Mellon University v. Cohill, 484
5  U.S. 343, 350 n.7 (1988)); see also United Mine Workers v. Gibbs, 383 U.S. 715,
6  726 (1966) (if federal claims dismissed before trial, state claims should be
7  dismissed as well); McKinney v. Carey, 311 F.3d 1198, 1201 n.2 (9th Cir. 2002)
8  (district court appropriately declined to exercise supplemental jurisdiction over
9  state claims where federal claims dismissed).

10  **V.    RECOMMENDATION**

11        IT THEREFORE IS RECOMMENDED that the District Judge issue an
12  Order:  (1) approving and adopting this Report and Recommendation; (2) granting
13  the City Motion and the Towing Motion to the extent such motions seeks summary
14  judgment in defendants' favor on plaintiff's federal claims;[22] and (3) declining to
15  exercise supplemental jurisdiction over plaintiff's state law claims and dismissing
16  such claims without prejudice.

17  DATED:   March 2, 2010

18                                      _____/s/_____

19                                      Honorable Jacqueline Chooljian
20                                      UNITED STATES MAGISTRATE JUDGE

---

25        [22]Although plaintiff recites in the Second Amended Complaint that his federal claims are
26  predicated upon 42 U.S.C. §§ 1985, 1986, and 1988, as well as upon Section 1983 (SAC at 1), he
   offers no evidence or argument in support of such other "claims" beyond that which, as discussed
27  above, is insufficient to persuade a reasonable trier of fact that plaintiff has stated a viable
   constitutional claim.
28